IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>1. SOFIDEL AMERICA CORP., )<br>)<br>Defendant. )<br>) | Case No. 24-cv-00462-JFJ<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### Nature of the Action

This is an action under Title VII of the Civil Rights Act of 1964 ("Title VII") and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices because of sex and to provide appropriate relief to Charging Party, Camryn Edmonds ("Edmonds"). As alleged below, Plaintiff, Equal Employment Opportunity Commission (the "EEOC" or "Commission"), alleges that Defendant, Sofidel America Corp. ("Sofidel"), violated Title VII when it allowed an older male co-worker to sexually harass her for more than six months, which continued even after Edmonds complained to Sofidel about his conduct. Because she feared that Sofidel was not doing enough to protect her from ongoing harassment, Edmonds complained to law enforcement and obtained an emergency judicial order of protection against her harasser,

which she provided to Sofidel. The next day, Sofidel terminated Edmonds in retaliation for obtaining the protective order.

## Jurisdiction and Venue

1. The Court has jurisdiction under 28 U.S.C. §§ 451, 1331, 1337, 1343, 1345, and 42 U.S.C. §§ 2000e-5(f)(3).

2. The EEOC is authorized to institute this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-5(f)(1) and (3), and under the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Oklahoma.

## Parties

4. Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation, and enforcement of Title VII.

5. Defendant Sofidel is a for-profit business corporation incorporated in Florida that, at all relevant times, has been continuously doing business in Inola, Oklahoma, and has continuously had at least 15 employees.

6.    Defendant Sofidel has been an employer engaged in an industry affecting commerce at all relevant times under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## Administrative Procedures

7.    More than thirty days prior to the filing of this lawsuit, Edmonds filed a Charge of Discrimination with the Commission alleging that Sofidel violated Title VII.

8.    On August 27, 2024, the Commission issued to Sofidel a Letter of Determination that found reasonable cause to believe that Title VII was violated and that invited Sofidel to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

9.    The Commission communicated with Sofidel to provide Sofidel the opportunity to remedy the discriminatory practices described in the Letter of Determination.

10.    The Commission was unable to secure from Sofidel a conciliation agreement acceptable to the Commission.

11.    On September 19, 2024, the Commission issued to Sofidel a Notice of Conciliation Failure that advised Sofidel that the Commission was unable to secure from Sofidel a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## Statement of Facts

13. Edmonds was employed by Sofidel as a production line operator at its paper mill and converting plant in Inola, Oklahoma, from on or about October 3, 2022, until Sofidel discharged her on or about July 11, 2023.

14. Sofidel produces and markets tissue paper, namely paper for hygienic or domestic use, including toilet paper, kitchen towels, napkins, handkerchiefs, and tissues.

15. Sofidel had more than 500 employees nationwide in 2022 and 2023.

16. On October 3, 2022, Sofidel hired Edmonds, who was 22 years old, to work as a CMV Operator.

17. Edmonds was qualified for her position as a CMV Operator.

18. Edmonds performed her job duties satisfactorily.

19. During her employment, Edmonds received only one disciplinary action, which she received during the first month of her employment, but she did not receive any other disciplinary actions.

20. During her employment, an older male co-worker who worked on a nearby production line, Alamin Karriem, subjected Edmonds to unwanted sexual comments.

21. For example, in or around late November 2022, after Sofidel moved Edmonds to a new production line, Karriem started making comments to Edmonds when he passed her, including comments about her body and how she looked, and texted Edmonds from an unknown number with vague and unsolicited sexual innuendo.

22. In early 2023, after Sofidel taught Edmonds how to run the production line and moved her to an area that was more isolated from other employees, Karriem started harassing her more frequently, and his comments became more threatening, forceful, and intimidating, including explicit demands that she perform various sex acts.

23. For example, at various times throughout the first half of 2023, Karriem told Edmonds that: (a) he wanted her to touch his penis; (b) wanted to put her on his knee and spank her; (c) bragged about showing the younger Edmonds what an older man like him could do sexually; (d) called Edmonds inappropriate names like "brown sugar" and "sweet baby"; and (e) called Edmonds a "young bitch" that was "rude" when she rebuffed him.

24. Edmonds was offended by Karriem's conduct, which made her feel uncomfortable and violated, and she repeatedly asked Karriem to leave her alone and stop harassing her.

25. Karriem continued subjecting Edmonds to sexual comments and became increasingly aggressive toward her as she continued to reject his sexual advances.

26. Karriem also started acting more erratic, bizarre, and unhinged, and often ranted and threatened Edmonds that he had been to prison and was not afraid to go back.

27. Karriem also boasted to Edmonds that he was not at risk of being fired by Sofidel, usually while he was violating various policies and procedures without consequence, and suggested he was untouchable and allowed to do whatever he wanted because he ran his production line.

28. For more than six months, Karriem harassed Edmonds every week they worked the same shift, which was every other week given their different schedules.

29. While Karriem often harassed Edmonds away from other employees when she was alone or isolated, he sometimes made comments in front of other employees, which made Edmonds feel embarrassed.

30. Edmonds confided in some of her coworkers about the sexual harassment and some of them promised to intervene on her behalf but never did.

31. On June 6, 2023, Karriem approached Edmonds on the line and demanded she kiss him.

32. Edmonds refused, walked away, and reported his sexual conduct and aggression to Sofidel the same day.

33. Specifically, on June 6, 2023, Edmonds complained to Sofidel that she was being sexually harassed by Karriem, including to her shift leaders, the Superintendent, the CNV Production Manager, and HR Manager.

34. Edmonds was distressed, crying, and trembling as reported Karriem's sexual conduct to Sofidel on June 6, 2023.

35. When she complained on June 6, 2023, Edmonds told Sofidel that Karriem's conduct made her feel unsafe at work and pleaded with Sofidel to do something to stop it.

36. The same day, Edmonds provided a handwritten statement about Karriem's conduct to Sofidel that described Karriem's sexual demands and lewd comments, noted that that he was becoming increasingly more aggressive, explained that his treatment filled her with dread and made her feel less than as a woman and a co-worker, and asked Sofidel to address his conduct and make it stop.

37. Sofidel allowed Karriem to continue subjecting Edmonds to sexual conduct after Edmonds's complaint on June 6.

38. For example, after the meeting on June 6, the HR Manager told Edmonds to return to work on the production line, which she did. The HR Manager told Karriem to leave the facility that day and stay home on June 7-

9, 2023, pending an investigation, but Karriem did not immediately leave the facility and instead stayed at work and waited near Edmonds's work area, intimidating her.

39. The next day, on June 7, 2023, Karriem returned to the facility and watched and stared at Edmonds intimidatingly and did not leave the facility until the Superintendent escorted him out about two hours later.

40. Edmonds complained to Sofidel about Karriem again on June 7, 2023.

41. Specifically, after Karriem showed back up at the facility on June 7, 2023, Edmonds told the Superintendent that she was afraid for her safety.

42. The Superintendent responded to Edmonds's complaint by calling Edmonds "hysterical" and refusing to speak to her.

43. Edmonds also complained again to the HR Manager about Karriem on June 7, 2023.

44. Edmonds also told the MR Manager that she was afraid for her safety and that Sofidel needed to do more to protect her from Karriem after he showed up at the facility on June 7.

45. The HR Manager responded by dismissing Edmonds's concerns, told her she was late for meeting, and refused to tell Edmonds Karriem's last name.

46. After June 7, 2023, Edmonds went on an unrelated, planned medical leave of absence, which she expected to last until the first week of July 2023.

47. Sofidel did not take any additional disciplinary action against Karriem or other remedial measures to ensure he stopped the unwanted sexual conduct.

48. Sofidel had previously issued a 3-day suspension to Karriem at least twice before, in June 2021 and February 2022, when he was caught on his cell phone at work.

49. On Friday, July 7, 2023, Sofidel did not allow Edmonds to return to work, had disabled her badge, and told her she would need to attend a meeting on the following Monday when she was not scheduled to work.

50. On July 7, 2023, Edmonds also spoke with the HR Manager on the phone about her return to work.

51. During the call, the HR Manager told Edmonds that Sofidel would pay her for the three days of work she was missing from July 7-9, 2023.

52. Sofidel never paid Edmonds for the days she missed work on July 7-9, 2023.

53. After Edmonds's call with the HR Manager on July 7, she was concerned that Sofidel was not going to protect her from Karriem.

54. On July 7, 2023, Edmonds reported Karriem's sexual harassment to the Inola Police Department.

55. The same day, on July 7, 2023, Edmonds filed a Petition for an Emergency Protective Order against Karriem in the District Court of Tulsa County.

56. The District Court granted an Emergency Protective Order the same day and set a hearing for July 19, 2023.

57. On July 10, 2023, Edmonds met with Sofidel about her return to work in a meeting attended by Edmonds, the HR Manager, and the CNV Production Manager.

58. During the meeting, Sofidel told Edmonds that it was reassigning her and Karriem to new shifts moving forward, and that Edmonds would start her new shift on Wednesday, July 12, 2023, at 6:00 a.m.

59. During the meeting, Edmonds disclosed to Sofidel that she had contacted law enforcement about Karriem's harassment and had obtained a protective order against him, which she handed to the HR Manager.

60. The next day, on July 11, 2023, Sofidel terminated Edmonds.

61. Specifically, on July 11, 2023, the HR Manager called Edmonds on the phone and told her that Sofidel's corporate office instructed the HR Manager to fire Edmonds because she obtained a protective order.

62. In a termination letter dated July 12, 2023, Sofidel stated that it terminated Edmonds as of July 9, 2023, and did not list a reason for the termination.

63. Sofidel did not terminate Karriem because of the protective order or his treatment of Edmonds but allowed him to remain employed after July 11, 2023.

## Statement of Claims

### Count I
### Title VII - Sexual Harassment / Hostile Work Environment

64. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

65. Sofidel subjected Edmonds to sexual harassment and a sexually hostile work environment in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1).

66. Specifically, Sofidel subjected Edmonds to severe, pervasive, and abusive sexual harassment when an older male co-worker made repeated, unwanted, explicit, forceful, and intimidating sexual comments and demands, which altered the terms and conditions of Edmonds's employment and unreasonably interfered with Edmonds's work.

67. Sofidel knew or should have known about the sexual harassment, which occurred on the production floor and sometimes occurred in front of other employees.

68. Sofidel knew or should have known about the sexual harassment because Edmonds complained about it on or about June 6-7, 2023.

69. Sofidel failed to take immediate and appropriate corrective action to stop the harassment and allowed it to continue after Edmonds complained about it on June 6, 2023.

70. Sofidel's unlawful employment practices deprived Edmonds of equal employment opportunities and otherwise adversely affected her employment because of her sex.

71. Sofidel intentionally engaged in these unlawful employment practices.

72. Sofidel acted with malice or with reckless indifference to Edmonds's federally protected rights.

73. Edmonds has suffered damages because of Sofidel's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Count II
### Title VII – Retaliation (Discharge)

74. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

75. Sofidel retaliated against Edmonds in violation of Title VII, 42 U.S.C. § 2000e-3(a) when it terminated her on July 11, 2023, because of her prior complaints about sexual harassment.

76. Specifically, Edmonds complained to Sofidel about sexual harassment on June 6, 2023; June 7, 2023; and July 10, 2023, when she provided Sofidel a copy of a judicial protective order she obtained against her harasser on July 7, 2023.

77. Sofidel terminated Edmonds on or about July 11, 2023, the day after she provided Sofidel a copy of the judicial order of protection.

78. Sofidel intentionally engaged in these unlawful employment practices.

79. Sofidel acted with malice or with reckless indifference to Edmonds's federally protected rights.

80. Edmonds has suffered damages because of Sofidel's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation, embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Count III
### Title VII – Sex Discrimination (Discharge)

81. Plaintiff repeats, re-alleges, and incorporates by reference the allegations in the foregoing paragraphs of this Complaint into this Count.

82. Sofidel discriminated against Edmonds because of her sex in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) when it discharged her because of her sex on July 11, 2023.

83. Specifically, on July 11, 2023, the day after Edmonds provided Sofidel a copy of the judicial order of protection against Karriem, Sofidel terminated Edmonds but did not terminate Karriem, her male harasser.

84. Sofidel's unlawful employment practices deprived Edmonds of equal employment opportunities and otherwise adversely affected her employment because of her sex.

85. Sofidel intentionally engaged in these unlawful employment practices.

86. Sofidel acted with malice or with reckless indifference to Edmonds's federally protected rights.

87. Edmonds has suffered damages because of Sofidel's conduct, including but not limited to lost earnings and benefits, emotional distress, pain and suffering, anxiety, loss of enjoyment of life, humiliation,

embarrassment, and inconvenience, and other actual pecuniary and non-pecuniary damages.

## Prayer for Relief

The Commission respectfully requests that the Court:

A.     Grant a permanent injunction enjoining Sofidel, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from harassing or subjecting employees to a hostile work environment because of sex.

B.     Grant a permanent injunction enjoining Sofidel, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from retaliating against employees because they complained about sex discrimination or sexual harassment.

C.     Grant a permanent injunction enjoining Sofidel, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against employees because of sex.

D.     Order Sofidel to institute and carry out policies, practices, and programs that provide equal employment opportunities for women, that ensure that victims of sexual harassment have the ability to effectively report it, that require Sofidel to promptly and adequately investigate all reports of sexual harassment, that require Sofidel to take promptly and corrective

measures to end the sexual harassment, and that eradicate the effects of its past and present unlawful employment practices.

  E. Order Sofidel to make Edmonds whole by providing appropriate backpay, front pay, and lost benefits with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to training requirements, notice posting, and policy revisions.

  F. Order Sofidel to make Edmonds whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including increased transportation costs for job searches and other expenses, in amounts to be determined at trial.

  G. Order Sofidel to make Edmonds whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful employment practices described above, including but not limited to emotional distress, pain and suffering, anxiety, humiliation, and loss of enjoyment of life, in amounts to be determined at trial.

  H. Order Sofidel to pay punitive damages for its malicious and reckless conduct, as described above, in amounts to be determined at trial.

  I. Grant such further relief as the Court deems necessary and proper in the public interest.

  J. Award the Commission its costs of this action.

## Jury Trial Demand

The Commission requests a jury trial on all questions of fact raised by its complaint.

        Respectfully submitted,

        KARLA GILBRIDE
        General Counsel

        CHRISTOPHER LAGE
        Deputy General Counsel

        GWENDOLYN YOUNG REAMS
        Associate General Counsel

        ANDREA G. BARAN
        Regional Attorney

        LAUREN W. JOHNSTON
        Assistant Regional Attorney

        s/ Joshua C. Stockton
        Joshua C. Stockton, OBA # 21833
        Trial Attorney
        Equal Employment Opportunity
        Commission
        Oklahoma Area Office
        215 Dean A. McGee, Suite 524
        Oklahoma City, OK 73102
        (405) 666-0387
        joshua.stockton@eeoc.gov

        **ATTORNEYS FOR PLAINTIFF**
        **EQUAL EMPLOYMENT**
        **OPPORTUNITY COMMISSION**